ALLEN, Acting Chief Judge.
This is an appeal by Charles Hammett, defendant below, from an order granting the plaintiff a new trial. The order granting the new trial did not give the judge’s reasons therefor. In a series of cases our Supreme Court has held that in the absence of the judge’s reason for granting a new trial, such an order must be reversed, except under certain conditions. See Kent v. Tallahassee Motor Co., 141 Fla. 789, 193 So. 821; Booker v. Saunders Realty Co., Fla.1951, S3 So.2d 912; Ebersole v. Tepperman, Fla.1953, 65 So.2d 564.
In Kent v. Tallahassee Motor Co., supra, the plaintiff had brought an action of deti-nue against Tallahassee Motor Co., claiming damages in the sum of $500 for the detention of an automobile owned by him. The trial resulted in a verdict for the plaintiff in the sum of $450. A new trial was granted but the ground or grounds therefor were not given. In its opinion the Supreme Court said:
“Rule 74 of the common law rules as approved September 18, 1936, requires the trial court when granting a motion for new trial to state in his order the ground or grounds upon which he grants it. The requirement of this *746 rule is mandatory and should be observed by the trial judges unless some good reason is apparent for not doing so. In this case, we do not hold him in error for failure to observe this requirement because the record shows on its face that the verdict was fatally defective so a new trial was imperative.
“The verdict merely found for plaintiff and assessed his damages. There was a failure to find and assess the value of the automobile sued for. Detinue in Florida is a pure common law action and being so, when verdict is for the plaintiff, it is fatally defective if it fails to assess the value of the property sued for. Crandall, Florida Common Laws Practice, 557, 558.
“We accordingly affirm the order granting the new trial.”
In Booker v. Saunders Realty Co., supra, the Supreme Court reversed the lower court for granting a new trial without assigning his reasons therefor. The Court stated:
“In this case we have reviewed the entire record and it appears that the case was duly tried and the record contains sufficient evidence to support the verdict inasmuch as several witnesses testified to facts which, if believed by the jury, would sustain the defendant’s case.”
In City of Miami v. Bopp, 117 Fla. 532, 158 So. 89, 97 A.L.R. 1035, the lower court’s order, as stated in the opinion, is as follows:
“ ‘The motion for a new trial heretofore interposed by the above named plaintiff, Caroline Wolfe, and which motion was filed on the 23rd day of June, 1933, coming on for hearing, and after argument of counsel and consideration of affidavits and briefs filed in relation to said motion and the Court being duly advised in the premises ;
“ ‘It is thereupon ordered that said motion for a new trial be and the same is hereby granted, to which ruling of the court the defendant, City of Miami, duly excepts.’ ”
The Supreme Court then commented:
“If the thing transpired which the juror Charles Brown and the juror Lewis H. Dodge said in their respective affidavits did transpire, then the verdict of the jury was influenced by the consideration of matters outside the evidence and was brought about by unlawful and illegal means.
“It is true, as a general rule, on the ground of public policy, that the affidavit, deposition, or statement of a juror will not be received to impeach his own verdict; but this court has heretofore recognized exceptions to that rule, and especially that exception which is generally recognized by the courts of this country.
* # * * * *
“We are not advised by the order of court just what ground, or grounds, of the motion for a new trial were held to be well taken; but inasmuch as the order does state that the court has considered these affidavits, amongst other things, and thereupon grants a new trial, the inference is that the trial court found the verdict had not been rendered without improper in.fluence.”
The Court then affirmed the lower court’s order granting the new trial.
In the instant case we have read the entire testimony adduced below and, after giving the defendant credit on his counterclaim for everything he claimed and according him every favorable construction of the agreement which he claims he had with the plaintiff, the evidence does not *747 sustain the verdict rendered in the defendant’s favor.
The plaintiff, Lyte Lyne, Inc., filed its complaint alleging that the defendant, Charles Hammett, was indebted to the plaintiff in the sum of $1800, representing money which the defendant collected for the benefit of the plaintiff on the sale of its merchandise.
The defendant Hammett answered denying the material allegations of the complaint and also filed a counterclaim in which he alleged that plaintiff was indebted to him in the specific amount of $1400.
At the pre-trial conference it was admitted by the appellant, through counsel, that he had collected the sum of $1800 and subsequently admitted by the defendant’s testimony that he owed the plaintiff $1800. However, he contended that this sum was off-set by the specific sum of $1400 which the plaintiff owed him. The sum of $1000 was claimed as unpaid salary and commissions ; $300 as commission on one sale of furniture to General Development Corporation; and $100 for the wrongful detention by plaintiff of defendant’s typewriter. In the prayer of his counterclaim defendant prayed for an accounting and judgment in the amount of $2500. The material allegations of the counterclaim were denied by the plaintiff.
Trial was held before a jury and at the outset defendant admitted holding the $1800 as proceeds from two sales of plaintiff’s outdoor furniture. The sole issue tried, therefore, was defendant’s entitlement to any money on his counterclaim.
It appears that in the spring of 1960, plaintiff corporation, through the efforts of its president, Henri Nemeroff, was in the early stages of production of a new line of outdoor furniture. Defendant approached Mr. Nemeroff suggesting that he could be of great assistance to plaintiff corporation in marketing its product. Some promotional activities were engaged in by defendant during March, April and May of 1960, but it is admitted that defendant’s efforts in this regard were voluntary. An agreement was later reached as to the nature of defendant’s association with plaintiff and the amount of compensation, which agreement took effect on June 1, 1960. The agreement was entirely oral and the respective versions of its content are in total conflict. Defendant contends and testified that he was to receive a minimum salary of $500 per month.
Plaintiff’s president, Henri Nemeroff, the one with whom all negotiations were carried on by defendant, testified that defendant was only to receive $500 per month as a draw against commissions. This contention is purportedly backed up by a proposal, preliminary to the agreement, submitted in memorandum form to Mr. Nemeroff by the defendant and titled “If Agreement.” This memorandum appears in the record as plaintiff’s Exhibit 5. In this memorandum defendant proposed to expend his efforts for plaintiff “If you will start me in on a minimum salary of $500.00 per month against commissions earned and this to start June 1, 1960.” (Emphasis added.) It is readily observed that had this statement become part of a written agreement between the two parties, it is sufficiently ambiguous so as to be susceptible to either of the above interpretations of how compensation was to be paid.
Defendant also testified that he was to be the exclusive salesman and was to receive a 10% commission on all sales made by plaintiff corporation whether he was the procuring cause or not. Mr. Nemeroff, on the other hand, testified that defendant was to receive his commission only on the sales made by him.
The only other material conflicts in the testimony go to what date defendant’s employment with plaintiff was severed and his entitlement to a commission for sales consummated after that date, whenever it was. Mr. Nemeroff and his secretary both *748 testified to hearing defendant say, “I quit” on August 30, 1960, after an argument with Nemeroff. Defendant denied quitting at that time and testified in effect that his employment was not terminated until Sept. 30, 1960. For sales completed after September 30, 1960, defendant claimed and testified forcefully to his entitlement to a ■commission on only one, that one being a •sale of furniture to General Development Corporation for. which defendant claimed a commission in round figures of $300.
Defendant’s exhibit 5 is an extract from plaintiff’s ledger accounts purportedly showing plaintiff’s sales of outdoor furniture during the period in question. Under defendant’s theory as to what was the employment agreement between the parties and assuming defendant’s employment lasted through September of 1960 and further that defendant was entitled to the $300 commission on the General Development account, the maximum salary, commission or combination of both to which defendant could be entitled are as follows:
June, 1960 $500.00
July, 1960 ■ 552.00
August, 1960 500.00
September, 1960 500.00
October, 1960 300.00
$2352.00
Defendant’s $100 claim for conversion of his typewriter was abandoned during the trial, the typewriter having been returned.
Against this $2352, defendant admitted receiving from plaintiff $1000 as salary for June and July. Thus, viewing the evidence in the light most favorable to defendant, when the case went to the jury, the most the defendant proved he should have received on his counterclaim was a $1352 set-off against $1800 admittedly due the plaintiff. Thus, the plaintiff would have been entitled to a verdict for the difference between $1800 and $1352, or the sum of $448.
We hold in this case that under any view of the evidence the defendant was not entitled to a verdict in his favor and therefore the failure to assign grounds for a new trial was not reversible error.
Affirmed.
SMITH and WHITE, JJ., concur.